IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| RUTHIE J.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:20-CV-00067-BU |
| | § | |
| KILOLO KIJAKAZI,[2] | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Ruthie J. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. This case was referred pursuant an order of referral from United States District Judge Sam R. Cummings and reassigned to the undersigned United States Magistrate Judge on April 13, 2020. Dkt. No. 9. The parties have not consented to proceed before a magistrate judge.

For the reasons explained below, the undersigned recommends that the Court reverse the Commissioner's decision and remand this case for further administrative proceedings.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.
[2] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the current Acting Commissioner of the Social Security Administration has been automatically substituted as a party.

1

## I. BACKGROUND

Plaintiff alleges disability beginning February 23, 2015, due to depressive disorder, back injury, seizure, and migraines. Tr. 56, 72. Plaintiff filed applications for Disability Insurance Income ("DIB") and Supplemental Security Income ("SSI") on April 24, 2017 under Title II and Title XVI, respectively, of  Social Security Act (the "Act"). *Id.* Plaintiff's applications were denied initially and upon reconsideration. Plaintiff challenged the denials and requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff's request for a hearing was granted.

The ALJ held an administrative hearing on June 13, 2019. Tr. 28–54. Plaintiff and a vocational expert ("VE") offered testimony at the hearing. Plaintiff was 32 years old at the time of the hearing. Tr. 31. She has a high school degree and past work experience as a fast-food worker, residential support assistant, and home health aide. Tr. 31–32. Plaintiff could not recall the date she stopped working, although she believes it was sometime in 2016. Tr. 109. Plaintiff testified that her chronic back pain, PTSD, anxiety, depression, and bipolar disorder as the main medical conditions that interfere with her ability to work. *Id.*

On July 18, 2019, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled, and therefore not entitled to disability benefits. *See* Tr. 10–26. The ALJ's decision followed the five-step sequential evaluation process.[3] 20 C.F.R. § 404.1520(a)(4). At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her the alleged disability onset date, February 23, 2015. Tr. 15. At

---

[3] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act.

step two, the ALJ found that Plaintiff had the severe impairments of borderline personality disorder, depressive disorder, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). *Id*. The ALJ further determined that Plaintiff's alleged back pain was a non-severe impairment. Tr. 16.

At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or equaled the severity of one of the impairments listed in the Social Security regulations. Tr. 16. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: is able to understand and carry out detailed but uninvolved written or oral instructions; can have no work in crowds; can occasionally work with the public and coworkers; and can accept basic instructions from supervisors.

Tr. 18.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. Tr. 21. However, relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a laundry laborer, hand packager, and industrial cleaner—jobs that exist in significant numbers in the national economy. Tr. 22. The ALJ therefore concluded that Plaintiff was not disabled under the meaning of the Act. Tr. 23.

Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council denied review on March 25, 2020. Tr. 1–5. Therefore, the ALJ's decision is the final decision of the Commissioner and is properly before this Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's final decision necessarily includes an Appeals Council's denial of a claimant's request for review.").

Plaintiff then timely filed this action in federal district court.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that she is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the

ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

## III.  DISCUSSION AND ANALYSIS

Through this appeal, Plaintiff objects to the Commissioner's decision on three interrelated grounds. Dkt. No. 19 at 5. First, Plaintiff argues that the ALJ erred by failing to respond to Plaintiff's argument that further medical evidence was needed to assess whether Plaintiff met Listing 12.05. *Id*. Second, Plaintiff argues that the ALJ erred by failing to develop the record. *Id*. Third, Plaintiff argues that the ALJ erred in not evaluating Plaintiff's intellectual disabilities at step 3. *Id*.

Because the undersigned finds that the ALJ failed to develop the record, further administrative proceedings are warranted based on that issue alone.

A. <u>The ALJ erred in failing to fully develop the record.</u>

As noted above, all of Plaintiff's severe impairments in this case are mental. The ALJ found that Plaintiff had the severe impairments of borderline personality disorder, depressive disorder, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD).

Plaintiff testified at the hearing that her depression, anxiety, and PTSD go back to her childhood. Tr. 33. Plaintiff was placed in the foster care system at age ten or eleven until she aged out. Tr. 253. Prior to that time, Plaintiff suffered repeated physical and sexual abuse at the hands of family members. Tr. 33. At the hearing, she testified that she still feels she must live in hiding for fear her abusers will come for her. Tr. 34–35.

At the hearing, Plaintiff was unsure of her specific age. Tr. 31. She testified that she was in special education classes during high school and that her reading is poor. Tr. 37. If there are "big words," she will skip those.  Tr. 38.

Plaintiff also testified at the hearing that she has been homeless for two years. Tr. 42. She only recently started to receive help for her mental problems. Tr. 41. Plaintiff testified that she cannot pay attention long enough to watch a movie, and was fired from her job at McDonald's because she was always getting side-tracked. Tr. 45–46. Although she has three children, they live with their father, and she sees them once or twice a month. Tr. 46. Additionally, Plaintiff testified that she has difficulty interacting with people. Tr. 48. In her past position as a home health care aide, she would try to write notes, but her coworkers could not understand what she meant. Tr. 49.

The medical records contain one consultative psychological examination conducted for Plaintiff's disability application with Kristine Johnston Genvell, Ph.D on November 20, 2017. Tr. 249–254. Dr. Genvell determined that

> [Plaintiff's] prognosis appears guarded at this time. She seems to be experiencing chronic problems with PTSD, her mood, and concentration, which appear to be interfering with her social and occupational functioning. She also reported a history of learning difficulties. Intelligence testing may be helpful to ascertain the nature and extent of any learning problems. She is not on a psychotropic regimen. Her

7

> condition may benefit from ongoing monitoring and possible additional intervention as deemed necessary.

Tr. 252.

Further, with respect to Plaintiff's functional capability, Dr. Gerwell noted that Plaintiff

> has the ability to learn, recall, and use information to perform work activities with reiteration and further instruction if necessary. She can understand, carry out and remember simple instructions. Complex instructions may need to be reiterated. She has moderate difficulty sustaining her concentration. Her ability to maintain effective social interaction on a consistent and independent basis with supervisors, public, or deal with normal pressures in a competitive work setting was reported to be below average. [Plaintiff's] mental disorder would prevent her from maintaining her well-being in a work setting.

*Id*.

Plaintiff's testimony and medical records show that she received subsequent mental health treatment for her anxiety and depression at the Betty Hardwick Center and her symptoms improved with medication. Tr. 35, 258–305, 316–345, 353–372.

When assessing mental impairments, an ALJ must consider evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and pressures in a work setting. 20 C.F.R. § 404.1545(c). An ALJ must use the "paragraph B criteria" to rate the severity of a claimant's mental limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id*. § 404.1520a(c)(3); *see id*. Part 404, Subpart P, Appendix 1. Additionally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d).

Here, the ALJ relied on the results of the consultative examination and other medical evidence when assessing whether Plaintiff's impairments (or combination of impairments) met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. Tr. 16. The ALJ analyzed Plaintiff's impairments under Listing 12.04 (Depressive, Bipolar and Related Disorders) and 12.08 (Personality and Impulse-Control Disorders). *Id*. As a part of that analysis, the ALJ determined whether the "paragraph B" criteria were satisfied. *Id*. The ALJ determined that Plaintiff had a moderate limitation in understanding, remembering, or applying information. *Id*. With respect to her ability to interact with others, the ALJ also found that Plaintiff had a moderate limitation. *Id*. The ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. Lastly, the ALJ found that Plaintiff had a moderate limitation in adapting or managing oneself. *Id*.

Plaintiff argues that the ALJ should have also evaluated this case under Listing 12.05(B) (Intellectual Disorder). Dkt. No. 19 at 9. Listing 12.05(B) requires:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

   a. Understand, remember, or apply information (see 12.00E1); or

   b. Interact with others (see 12.00E2); or

   c. Concentrate, persist, or maintain pace (see 12.00E3); or

      d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(B).

Plaintiff's counsel raised the issue of Plaintiff's intellectual limitations and the applicability of Listing 12.05 at the ALJ hearing. Tr. 53. Prior to the hearing, Plaintiff filed childhood intellectual testing records on Plaintiff's behalf. Tr. 346–352. Plaintiff's attorney filed an accompanying statement that Plaintiff has intellectual difficulties that may be significant under Listing 12.05, which requires proof that the intellectual disorder began before age 22. Tr. 346. Plaintiff also requested that the ALJ order IQ testing to further determine Plaintiff's intellectual limitations. *Id*.

Plaintiff's childhood intellectual testing records included IQ tests administered by a licensed psychologist at the Buckner Assessment Center when she was age 12. *Id*. The results of these tests indicated that Plaintiff's general cognitive ability was considered in the "borderline" range. Tr. 348. Her overall thinking and reasoning abilities were placed at the fourth percentile (4%) with an FSIQ of 73. *Id*. Furthermore, Plaintiff's verbal reasoning abilities were deemed to fall in the first percentile (1%), with a VIQ of 65. Tr. 349. Plaintiff's non-verbal reasoning was determined to be more advanced and in the low-average range, at the eighteenth percentile (18%). Tr. 348.

As noted above, the ALJ has a duty to develop the record. *See Ripley*, 67 F.3d at 557. "However, '[t]he ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on

the record.'" *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Leggett*, 67 F.3d at 566). "As a result, [Fifth Circuit] case law requires . . . further development of the record only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Hardman*, 820 F.3d at 147 (citations and internal quotation marks omitted).

In *Pierre v. Sullivan*, the Fifth Circuit held that "isolated comments about the limits of [a claimant's] intellectual functioning, when viewed within the record a whole, were not sufficient to raise a suspicion" that the claimant had an intellectual disability." 884 F.2d 799, 802 (5th Cir. 1989). In that case, the claimant did not allege an intellectual disability in her initial request for benefits but listed her only mental impairment as "nerves." *Id*. Furthermore, neither of the two doctors and the psychologist who examined her suggested that her intelligence be tested. *Id*. The court determined that "[w]hen there is no contention that a claimant is mentally retarded, a few instances in the record noting diminished intelligence do not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record." *Id*. at 803.

Likewise, in *Hardman*, the Fifth Circuit found that the ALJ did not err by not ordering intellectual testing despite the claimant's testimony that "he had no education and could not read, write, or do math." 820 F.3d at 147. In *Hardman*, the claimant in his initial application "never mentioned that he may have had an intellectual disability and did not claim to have a medical impairment or mention that he had sought treatment for one." *Id*. at 148. The court also noted that "[t]he record was replete with medical documents that

spanned years, including a psychiatric residual functional capacity assessment, and none of the medical records suggested that [the claimant] was illiterate." *Id*.

In this case, Plaintiff did not allege that she had an intellectual disability (among her many other mental impairments) when she initially applied for benefits. Nevertheless, once she obtained counsel, her attorney made a written and oral request that the ALJ consider Plaintiff's case under Listing 12.05 and obtain a consultative examination with adult IQ testing. The attorney also filed intellectual testing records that included childhood IQ scores indicating Plaintiff might suffer from an intellectual disability. Plaintiff's testimony at the hearing was that she was in special education classes in school and had difficulty reading. Most importantly, unlike in *Pierre*, the psychologist who conducted Plaintiff's sole psychological evaluation noted in her report that Plaintiff may benefit from intelligence testing, "to ascertain the nature and extent of any learning problems." Tr. 252.

Despite Plaintiff's requests, here supported by the filing of childhood IQ scores and the report of Dr. Genvell, the ALJ did not order a consultative examination with IQ testing to ascertain the extent of Plaintiff's intellectual limitations. Further, the record does not indicate that the ALJ ever ruled on or addressed either of Plaintiff's requests. Even if the ALJ determined the consultative examination was unnecessary, the Court is unable to determine whether the ALJ had a reason for not ordering one.

Based upon a review of the record, the undersigned therefore finds that Plaintiff has met her burden to "present[] evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Hardman*, 820 F.3d at 147. Because the undersigned finds that the

12

ALJ erred in failing to fully develop the record, the undersigned also finds that the ALJ's disability determination was not supported by substantial evidence.

B. The ALJ's failure to develop the record prejudiced Plaintiff.

Because the record does not contain adequate medical opinion evidence concerning Plaintiff's intellectual limitations, the ALJ should have granted Plaintiff's request for a consultative examination, including IQ testing, to further develop the record.

Nevertheless, reversal is only warranted if the claimant shows that she was prejudiced by the error. "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)); see *Ripley*, 67 F.3d at 557 n.22 (citing *Kane*, 731 F.2d at 1220) ("Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.").

Here, the ALJ did not consider the applicability of Listing 12.05, the listing applicable for intellectual disorders. While there is overlap regarding the paragraph B criteria for all mental listings, had the ALJ further developed the record, specifically through a consultative examination to obtain adult IQ scores, the ALJ could have determined that Plaintiff's limitations under the paragraph B criteria were more severe (either marked or extreme) than found in his current decision. The ALJ therefore might have reached a different conclusion had he fully developed the record and then considered

13

Plaintiff's mental impairments under Listing 12.05. The Court cannot be certain that the ALJ would have made the same decision had the record been fully developed.

The undersigned therefore concludes that the ALJ's failure to obtain a consultative examination to determine the extent of her intellectual limitations, including IQ scores, prejudiced her. Because the ALJ's decision is not supported by substantial evidence, and because Plaintiff was prejudiced by such error, it is recommended that this case be remanded for additional administrative proceedings. *See Walls v. Colvin*, 5:13-CV-235-C, 2014 WL 3546084, at *2 (N.D. Tex. July 15, 2014) (finding that a failure to follow through on a request for a consultative examination required a reversal and remand). On remand, the ALJ can request the relevant consultative examination to ascertain the extent, if any, of Plaintiff's intellectual limitations.

## IV.  RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the hearing decision be REVERSED and this case REMANDED to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.  Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to Senior United States District Judge Sam R. Cummings in accordance with normal procedures.

## V.  RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after

being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 5th day of August, 2021.

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE